JOHNSON, P. J.
This action in claim and delivery presents the question whether the lien of a garage-keeper for storage of an automobile and for supplies and service furnished has priority over the rights of an innocent purchaser for value, without notice of the lien, where the owner was permitted to remove the automobile from the garage for use in business day by day, and the sale was made at a time when the automobile was not in the garage.
The case was tried upon an agreed statement of facts. It appears therefrom that the automobile in question was owned by the Triangle Produce Company, and for some time prior to May 18, 1931, was kept in a garage in San Francisco, operated by the defendant John Tseng under the name of New Pacific Garage. The Triangle Produce Company was allowed credit for storage charges and supplies furnished and service rendered, and notwithstanding accumulated charges therefor, was permitted to take the car from the garage day by day for business or other purposes.
On May 18, 1931, the unpaid charges amounted to $230.68, and in the evening of that day the car was taken from the garage by a person not identified. After being so removed, the car was sold and delivered to the Triangle *Supp. 789 Produce Company to the plaintiff, who is admitted to have been a bona fide purchaser for value, without knowledge or notice of any claim of lien on the part of the defendant Tseng, the proprietor of the garage. Upon delivery of the car to the plaintiff, it was placed in plaintiff’s private garage, where it was found later by Tseng and moved to his own garage. Thereupon plaintiff instituted this action to recover possession, and judgment was rendered in her favor. From that judgment the defendant John Tseng prosecutes this appeal.
In Pacific States Finance Corp. v. Freitas, 113 Cal. App. (Supp.) 757 [295 Pac. 804], and General Motors Acceptance Gorp. v. Silva, 113 Cal. App. (Supp.) 773 [295 Pac. 810], we had occasion to consider the rights of a garage-keeper to a lien for charges for storage and supplies contracted by a person in possession and control of an automobile under a contract of conditional sale, and who was permitted by the garage-keeper to remove the ear day by day for use in his own pursuits. In those cases it was held that notwithstanding such temporary withdrawal of the automobile, it continued to be constructively in the possession of the garage-keeper, and that his lien was not lost by reason of his parting conditionally with the physical possession, and hence was enforceable not only against the vendee under the contract of conditional sale, but also against the conditional vendor.
Using those decisions as a point of departure, the defendant contends that he was constructively in possession of the automobile of the Triangle Produce Company at the time of the sale to plaintiff, and that plaintiff took title charged with defendant’s lien and subject to defendant’s right to retake the car into his actual possession, to be held until his charges should be paid.
A distinction is to be made, however, between the situation of an innocent purchaser and that of a conditional vendor. The latter yields the control of the car to his vendee, and the vendee, thus becoming the “legal possessor”, may so deal with the garage-keeper as to give him the same right to a lien upon the car under section 3051 of the Civil Code, as if the transactions were had with the legal owner, subject only to the limitation prescribed by section 3051a. (Lindsay v. Kleiber Motor Truck Co., 100 Cal. App. 479 *Supp. 790 [294 Pac. 454].) So, also, is the lien acquired under section 3051 superior to that of a prior chattel mortgage. (Mortgage Securities Co. v. Pfaffmann, 177 Cal. 109 [169 Pac. 1033, L. R. A. 1918D, 118]; First Nat. Bank v. Silva, 200 Cal. 494 [254 Pac. 262]; Kranzthor v. Al. G. Faulkner Co., 47 Cal. App. 441 [185 Pac. 305].)
Among the cases cited on behalf of defendant are Caldwell v. Tutt, 10 Lea (78 Tenn.), 258 [43 Am. Rep. 307], and Welsh v. Barnes, 5 N. D. 277 [65 N. W. 675], where the lien of a livery-stable keeper for board of a horse was held superior to that of an execution or attachment creditor, whose levy upon the horse was made when the animal was temporarily in use by the owner. Here again there is a distinction between such creditor and an innocent purchaser; for as is said in Caldwell v. Tutt, supra, the owner’s creditor “must take his shoes, and can only take his property cum onere, as the owner himself held it at the time of seizure”.
Defendant’s reliance is placed for the most part on State v. Shevlin, 23 Mo. App. 598, and Frank v. Daily, 92 N. J. L. 118 [105 Atl. 9].
In State v. Shevlin, supra, the court was dealing with a controversy between a stableman and a chattel mortgagee; and there was lack of proof as to whether the mortgage of the horse wms made while it was in the stable or temporarily in use by the owner. Shortly after the mortgage was made, the horse was removed to another stable without payment of the charges for board, and the stableman thereupon seized the horse under a writ of replevin. The mortgagee then filed his claim, against which the stableman gave a bond to have the sheriff retain the horse in his custody. Upon obtaining judgment later, the stableman bought the horse at execution sale, and then in the case cited was sued on the bond by the mortgagee. In its opinion the court expressed the view that the lien of a stableman upon a horse subsists as against a mortgagee or purchaser without notice, provided the animal is permitted to be only temporarily removed from the stable, but is lost if the stableman voluntarily parts with the general custody before his charges are paid. There was a quotation drawn by us from this case in Pacific States Finance Corp. v. Freitas, supra, in support of the view that, as against a conditional vendor, uninterrupted physical possession by a garage-keeper was not essential to the persistence *Supp. 791 of his lien. We were not there considering the rights of an innocent purchaser, or using the case as an authority upon that point.
As regards the rights of an innocent purchaser taking title from an owner permitted to have temporary custody, there are really few precedents in jurisdictions where the rule of constructive possession obtains.
Much confidence is placed by defendant in the decision of the Supreme Court of New Jersey in Frank v. Daily, supra, under the Garage Keepers’ Lien Act of that state, which in Crucible Steel Co. v. Polack Tyre & Rubber Co., 92 N. J. L. 221 [104 Atl. 324], was held constitutional as against an attack by a conditional vendor. In the course of the discussion on the subject of validity of the statute, the court, after remarking that the prime object was to secure payment of a debt incurred by the owner or his representative, proceeded to say: “The fact that a third party, ignorant of a lien upon the property, might in good faith and for a valuable consideration acquire an interest therein, while such property was without the possession of the lienor and in the possession of the owner or his representative, cannot, as has already been observed, affect the validity of the statute, as this was a matter falling purely within the exercise of the wisdom and judgment of the legislature when the law was enacted.”
The decision in Frank v. Daily, supra, wherein the rights of an innocent purchaser were involved, was based, without other reasoning, upon the passage just quoted. Moreover, it must be borne in mind that in that case, the garage-keeper, while he had furnished certain supplies for the ear, had never had possession of it.
Frank v. Daily, supra, was a decision by the Supreme Court on appeal from a District Court; but through our own research there has been brought to our attention the later case of Lanterman v. Luby, 96 N. J. L. 255 [114 Atl. 325], wherein there was an appeal from the Supreme Court to the Court of Errors and Appeals. In that case a garage-keeper, who while in possession had supplied tires to the owner of the car, was asserting a lien against an innocent purchaser without notice. Treating this particular phase of the ease the court said (pp. 258, 259): “Where . . . the parties them *Supp. 792 selves agree with each other that the owner may take the chattel away from the possession or control of the lien claimant, and that the lien shall nevertheless continue; such agreement, as against the owner who was a party to it, will be good, but it will not be binding against a subsequent purchaser without notice. ...”
“Secret liens upon chattels are an obstruction and a menace to trade and as such are against the policy of the law. They attempt to contradict and to destroy the universally accepted and natural as well as legal badge of ownership of chattels, which is possession. The law is most jealous in its protection of an innocent purchaser of a chattel for value without notice, who has relied upon possession as the badge of ownership. If the property has been stolen his title may be bad, but, short of that, if he has looked for liens or encumbrances where the law has told him to look, as for instance, for chattel mortgages in the record where they are required to be recorded, and he finds none, he is entitled to rely upon what the possession tells him.”
And in further elucidation of the distinction between an innocent purchaser and a conditional vendor, the court made the following statement (p. 261) :
“It is true that in Crucible Steel Co. v. Polack Tyre & Rubber Co., supra, where a conditional vendee ordered the repairs to the auto truck in question and then defaulted on his contract of purchase of the truck, and his vendor took it back under the conditional sale contract, we held that the lien was good against the truck in the hands of the vendor, because, under these circumstances, such vendor was not an innocent purchaser for value without notice, but, under the express provisions of the act, occupied rather the position of a principal, with the conditional vendee his representative. For these very reasons that case is clearly distinguishable from this one.”
Nowhere in this decision is any reference made to the case of Frank v. Daily, supra; but the decision, being that of the court of ultimate authority in New Jersey and being in itself so thorough, is for us the more persuasive precedent. In Goldsmith Bros. v. Gensenleiter & Co., 28 Pa. Co. Ct. R. 399, and 14 Pa. Dist. Ct. R. 516, it was likewise held that an *Supp. 793 innocent purchaser of a horse, without knowledge of a stableman’s lien, was not liable for the debt, though he put the horse in the same stable.
A similar view as to the paramount right of an innocent purchaser appears to be entertained in Kamarin v. Sidney Garage, 137 Misc. 744 [244 N. Y. Supp. 337], although the court refrained from an absolute committal.
A lien is not an interest in the thing, but only a right of detainer as security for payment of a debt. (Johnson v. Razy, 181 Cal. 342, 344 [184 Pac. 657].) And in this state, as declared in Palmer v. Howard, 72 Cal. 293, 295 [13 Pac. 858, 1 Am. St. Rep. 60], and repeated in Stockton S. & L. Soc. v. Purvis, 112 Cal. 236, 242 [44 Pac. 561, 53 Am. St. Rep. 210], and Ferguson v. Murphy, 117 Cal. 134, 138 [48 Pac. 1018, 1019], “The policy of the law is against upholding secret liens and charges to the injury of innocent purchasers and encumbrancers for value.”
It is a general rule that if a claimant whose lien depends upon possession, actual or constructive, is deprived of possession fraudulently, he may still assert his right to a lien. Nevertheless in the amendment to section 3051 of the Civil Code, made in 1929, that rule is to some extent modified in behalf of innocent purchasers and encumbrancers by the provision that where the possession of, or lien upon, any automobile held under a claim of lien pursuant to that section is lost by reason of fraud, trick or device, the repossession of such automobile by the garage-keeper shall revive the lien so lost, subject to the qualification that any lien thus revived shall be subordinate to the rights of others acquiring title or lien in good faith and for value between the time of loss of possession and the time of repossession.
Since it is thus declared to be the policy of the law to protect an innocent purchaser or encumbrancer, even though the garage-keeper is induced by fraud or trick to part with possession, no good reason is suggested for withholding like protection when the garage-keeper voluntarily consents to let the owner have daily use of the car, trusting to an express or implied promise of return and relying on payment of his charges in due course.
In temporarily parting with possession, a garage-keeper necessarily takes the chance of losing his lien by an owner’s
*Supp. 794 sale to an innocent purchaser for value who is without notice of the claim.
We are therefore of the opinion that the plaintiff as an innocent purchaser for value without notice is entitled in this action to recover the car taken from her by the defendant, and the judgment in plaintiff’s favor is accordingly affirmed.
Conlan, J., and Goodell, J., concurred.